**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Perkins, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Employers Mutual Casualty Company, et al.,<br><br>    Defendants. | No. CV-20-01232-PHX-DWL<br><br>**ORDER** |

Plaintiffs Michael Perkins and Joshua Page (collectively, "Plaintiffs") were injured in a work-related accident while traveling in a car owned by their employer and driven by a co-worker. They submitted a claim to Employers Mutual Casualty Company and EMC Property and Casualty Company (collectively, "Employers"), which had issued a car insurance policy to their employer, for uninsured/underinsured motorist benefits under that policy. After Employers denied the claim, stating that Plaintiffs' exclusive remedy was to pursue workers' compensation benefits, Plaintiffs brought this action. (Doc. 1-3.) Now pending before the Court is Employers' motion to dismiss for failure to state a claim. (Doc. 5.) For the following reasons, the motion will be granted.

**BACKGROUND**

I.    <u>Factual Background</u>

The following allegations, which are assumed to be true for purposes of Employers' motion unless contradicted by matters properly subject to judicial notice, are derived from Plaintiffs' complaint. (Doc. 1-3.)

Plaintiffs were employees of Imperial Ironworks, LLC ("Imperial"). (*Id.* ¶ 17.) On February 1, 2018, Plaintiffs were driving back to their office after a job when Daniel Garcia, another Imperial employee and the driver, rear-ended another vehicle. (*Id.* ¶¶ 12, 14, 16-18.) Imperial owned the vehicle that Garcia was driving. (*Id.* ¶ 15.) Plaintiffs were severely and permanently injured by the accident. (*Id.* ¶¶ 19-21.) Garcia was "believed to be under the influence at the time of the accident" and did not pass Imperial's drug screening tests, yet he was nevertheless permitted to drive Imperial's vehicle. (*Id.* ¶ 23.)

Imperial is the named insured of an Employers commercial auto policy. (*Id.* ¶¶ 25, 27.) Because the vehicle involved in the accident was owned by Imperial, it is covered under the Employers policy. (*Id.* ¶¶ 26, 28.) The policy provides uninsured/underinsured motorist ("UM/UIM") coverage up to $1 million. (*Id.* ¶ 29.)

On April 5, 2018, Plaintiffs submitted a claim to Employers for UM/UIM coverage for their injuries. (*Id.* ¶¶ 43-44.) On April 10, 2018, Employers informed Plaintiffs that it had received the claim and would provide a response after it completed its investigation. (*Id.* ¶¶ 48-49.)

On April 16, 2018, Plaintiffs requested that Employers "confirm that there [was UM/UIM] coverage under the policy." (*Id.* ¶ 50.) Plaintiffs stated that they "would be first-party insureds under the policy and that they [were] entitled to know the coverages available and the policy limits for such coverages." (*Id.* ¶ 51.)

On April 19, 2018, Employers denied Plaintiffs' request for UM/UIM coverage. (*Id.* ¶¶ 52-53.) In support of the denial, Employers stated that "[w]orkers' compensation is your client(s) exclusive remedy as they were in the course and scope of their job." (*Id.* ¶ 56.) Additionally, Employers cited a policy exclusion that referred to workers' compensation. (*Id.* ¶ 55.)

On April 25, 2018, Plaintiffs sent a letter to Employers stating that they had never received a copy of the policy and that "there were cases in Arizona and other jurisdictions finding that exclusions to [UM/UIM] motorist claims [are] void." (*Id.* ¶¶ 61-62.) Plaintiffs also asked whether Employers had "obtained a coverage opinion" before denying

coverage.  (*Id.* ¶ 63.)

On May 4, 2018, after a follow-up letter from Plaintiffs, Employers informed Plaintiffs that it did not obtain a coverage opinion and that it was not required to do so.  (*Id.* ¶¶ 65, 67-68.)  Employers again cited the workers' compensation exclusion as its basis for denying coverage.  (*Id.* ¶ 73.)

On May 15, 2018, Plaintiffs asked Employers to "confirm that [Plaintiffs were] 'insureds' under the policy," but that it was Employers' view that Plaintiffs were not entitled to coverage due to the policy exclusion.  (*Id.* ¶¶ 75-76.)  On June 22, 2018, Employers responded by confirming that Plaintiffs were insureds and stating that Plaintiffs' sole remedy was workers' compensation.  (*Id.* ¶¶ 79-82.)  Additionally, Employers stated, for the first time, that Plaintiffs were not entitled to coverage because Imperial and Garcia had not engaged in "willful misconduct" and because there was not a qualifying "accident."  (*Id.* ¶¶ 83-84.)

On October 24, 2018, Plaintiffs sent a letter to Employers "noting that the sole basis for [Employers'] denial on two occasion[s] was" the exclusion.  (*Id.* ¶ 86.)  On November 15, 2018, Employers sent another letter to Plaintiffs confirming its denial of coverage.  (*Id.* ¶ 107.)

II.  The Policy

The Employers policy[1] contains provisions entitled "Arizona Uninsured Motorists Coverage" (Doc. 50-1 at 34-37) and "Arizona Underinsured Motorists Coverage" (Doc. 5-1 at 38-40).  Each provides in relevant part as follows:

> We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "[uninsured/underinsured] motor vehicle."  The damages must result from "bodily injury" sustained by the "insured" caused by an "accident."  The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "[uninsured/underinsured] motor vehicle."

---

[1] The Court will consider the policy, even though it was not attached to Plaintiffs' complaint, because the complaint refers to the policy and thus incorporated it by reference.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

- 3 -

(*Id.* at 34, 38.)

Each provision also defines the term "insured" to include "[a]nyone 'occupying' a covered 'auto.'" (*Id.* at 34, 38.)

III. Procedural History

On April 13, 2020, Plaintiffs filed suit in state court. (Doc. 1-3.)

On June 22, 2020, Employers timely removed the action to this Court based on diversity jurisdiction. (Doc. 1.)

On June 29, 2020, Employers filed the motion to dismiss. (Doc. 5.)

On July 13, 2020, Plaintiffs filed a response. (Doc. 6.)

On July 16, 2020, Employers filed a reply. (Doc. 9.)

On December 11, 2020, the Court issued a tentative ruling. (Doc. 11.)

On December 17, 2020, the Court held oral argument. (Doc. 12.)

**DISCUSSION**

I. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (internal quotation marks omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-80. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (internal quotation marks omitted).

…

…

II. Analysis

Plaintiffs have asserted two claims against Employers. Count One is a state-law claim for breach of contract. (Doc. 1-3 ¶¶ 108-23.) Count Two is a state-law claim for bad faith. (*Id.* ¶¶ 124-34.) As part of their bad faith claim, Plaintiffs also assert a claim for punitive damages. (*Id.* ¶ 133.) Employers moves to dismiss both claims and the claim for punitive damages. (Doc. 5.)

A. **Breach Of Contract**

Plaintiffs' breach of contract claim is premised on the allegation that Employers improperly denied their claim for UM/UIM benefits under the policy. (Doc. 1-3 ¶¶ 113-16.) Employers argues this claim fails as a matter of law because, in Arizona, workers' compensation is the exclusive remedy for work-related accidents. (Doc. 5 at 4-6.)[2] Plaintiffs respond by offering various reasons why Arizona's rule of exclusivity for workers' compensation benefits should be deemed inapplicable here. (Doc. 6 at 5-15.)

1. Arizona's Workers' Compensation Law

In Arizona, "[t]he right to recover compensation pursuant to [the workers' compensation scheme] for injuries sustained by an employee" is, subject to certain exceptions discussed further below, "the exclusive remedy against the employer or any co-employee acting in the scope of his employment." A.R.S. § 23-1022(A).

Employers argues it could not have breached the policy by denying Plaintiffs' claim for UM/UIM benefits because, under § 23-1022, Plaintiffs are barred from seeking such benefits. (Doc. 5 at 4-6.) Employers points to *Atlantic Specialty Insurance Co. v. Teller*, 224 F. Supp. 3d 844 (D. Ariz. 2016), which held that Arizona's "workers' compensation

---

[2] As noted, during the parties' pre-lawsuit correspondence, Employers also asserted that Plaintiffs' claim fell within a policy exclusion related to workers' compensation. That provision provides that "[t]his insurance does not apply" to "[t]he direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law." (Doc. 5-1 at 35, 39.) In its moving papers, Employers does not rely on this exclusion—instead, its arguments are based more broadly on the operation of Arizona's statutory scheme for workers' compensation. (Doc. 5 at 4 ["The Plaintiffs are not entitled to UM/UIM coverage because A.R.S. § 23-1022 establishes that workers' compensation is the exclusive remedy in an action against an employer."].) Accordingly, there is no need to resolve the merits of Plaintiffs' contention, advanced during oral argument, that the cited policy exclusion is inapplicable here and only governs claims for set-offs.

- 5 -

scheme bars UIM recovery when the underinsured tortfeasor is an employer." *Id.* at 849. The *Teller* court noted that "23 states . . . conclude[d] that a UIM claim is barred by workers' compensation schemes if the claim is based on an employer's or co-employee's fault," while only one court (in Oklahoma) had reached the opposite conclusion, so there was a "lack of serious debate" among the states about the issue. *Id.* at 848-49.  Plaintiffs respond that "*Teller* is wrongly decided" and point to *Transnational Insurance Co. v. Simmons*, 507 P.2d 693 (Ariz. Ct. App. 1973), as the key Arizona case supporting their position. (Doc. 6 at 8-10.)

"In determining the law of the state for purposes of diversity, a federal court is bound by the decisions of the highest state court.  If the state's highest court has not decided an issue, it is the responsibility of the federal courts sitting in diversity to predict how the state high court would resolve it." *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011) (citation and internal quotation marks omitted). "The decisions of the state's intermediate appellate courts are data that a federal court must consider in undertaking this analysis." *Air-Sea Forwarders, Inc. v. Air Asia Co.*, 880 F.2d 176, 186 (9th Cir. 1989). Here, the Court's best prediction is that the Arizona Supreme Court would decline to extend coverage to Plaintiffs in these circumstances.

*Teller* squarely addressed the impact of § 23-1022 on an employee's ability to recover UM/UIM benefits[3] from an employer and concluded that "Arizona's workers' compensation scheme eliminates all causes of action against an employer for a workplace injury." 224 F. Supp. 3d at 849. The employees in that case were therefore "not legally entitled to recover . . . and their UIM claim . . . [was] barred." *Id.* The Court reaches the same conclusion here. Plaintiffs are attempting to recover UM/UIM benefits from their employer, via their employer's insurance carrier, for a workplace injury caused by their co-worker. Although Plaintiffs argue that the phrase "legally entitled to recover" is ambiguous and thus should be construed against Employers (Doc. 6 at 7), "[w]here the policy language

---

[3] Plaintiffs argue that *Teller* is distinguishable because it involved "underinsured motorist coverage only, whereas this case involves uninsured motorist coverage." (Doc. 6 at 9.) Plaintiffs do not articulate why this distinction is meaningful and, in any event, the policy language here is identical for both forms of coverage.

- 6 -

1  is clear," as it is here, "a court may not take the easy way out by inventing ambiguity, and
2  then resolving it to find coverage where none exists under the policy." *Sec. Ins. Co. of*
3  *Hartford v. Andersen*, 763 P.2d 246, 248 (Ariz. 1988). Because Arizona limits an
4  employee's remedy for workplace injuries to workers' compensation, Plaintiffs are not
5  "legally entitled to" coverage.

6       *Simmons* does not compel a different conclusion. In *Simmons*, an individual sued
7  his insurance company for UM coverage after a car accident, prevailed during arbitration,
8  and secured a large award. 507 P.2d at 694-95. During an ensuing action to confirm the
9  award, the insurer asked the trial court to decline confirmation because the individual's
10 claim was akin to a personal injury claim, and thus subject to a two-year statute of
11 limitations, and had been filed too late. *Id.* at 695. The trial court disagreed, holding that
12 the award was subject to confirmation because the individual's claim was more akin to a
13 contract action and was thus subject to a six-year statute of limitations. *Id.* On appeal, the
14 narrow question presented was whether the trial court had applied the correct statute of
15 limitations. The Arizona Court of Appeals affirmed, holding—after conducting an
16 examination of cases from other states—that the six-year "statute of limitations pertaining
17 to written contracts governs a claim by insureds under the uninsured motorist coverage"
18 and that the individual's "claim was well within that period." *Id.* Finally, the court went
19 on to reject the insurer's argument "that the phrase in its policy 'legally entitled to recover'
20 requires an insured to establish every element of a claim for relief in tort and that the timely
21 filing of a suit within a two-year period of limitations is such an element." *Id.* The court
22 disagreed, stating that the policy language "simply mean[t] that the insured must be able to
23 establish fault on the part of the uninsured motorist which gives rise to damages and must
24 prove the extent of those damages." *Id.* at 696.

25       Plaintiffs attempt to seize on this final passage from *Simmons* as proof that an
26 insurance claimant should be considered "legally entitled to recover" whenever he can
27 establish fault and damages arising from the underlying accident and without regard to
28 whether the insurer has any available "statutory defenses." (Doc. 6 at 9.) The Court does

not share this interpretation. As an initial matter, the passage in *Simmons* concerning the meaning of the phrase "legally entitled to recover" may be dicta. Because the court had already concluded that the individual's UM claim was subject to a six-year statute of limitations, it is unclear why the court felt it necessary to address the insurer's argument concerning the meaning of this phrase, which seemed to be premised on the insurer's view that a two-year statute of limitations applied. And in Arizona, dicta—defined as "a court's statement on a question not necessarily involved in the case"—"is not controlling precedent." *Town of Chino Valley v. City of Prescott*, 638 P.2d 1324, 1327 (Ariz. 1981).[4]

More important, the passage from *Simmons* can be construed, at most, as a statement about the interplay between the phrase "legally entitled to recover" and one particular statutory defense—a defense based on the statute of limitations. The statutory defense at issue in this case, the exclusivity of workers' compensation established by § 23-1022(A), simply wasn't at issue in *Simmons*. There are significant differences between a statute-of-limitations defense, which is subject to waiver and forfeiture, and a defense based on the exclusivity of workers' compensation as a remedy. It would therefore be improper to lump the two defenses together as "statutory defenses," as Plaintiffs attempt to do, and conclude that the *Simmons* court's assessment of the former necessarily controls the assessment of the latter. *See also Teller*, 224 F. Supp. 3d at 849 ("[*Simmons*] dealt with determining whether a UIM claim was barred by the two-year statute of limitations for personal injury claims. It did not deal with the threshold issue of whether a UIM claim is allowed when the law expressly eliminates any claim against the tortfeasor, as is the case here.").

The bottom line is that Plaintiffs are asking this Court to construe a snippet of arguable dicta from *Simmons*, an opinion of an Arizona intermediate court, as proof that the general rule of workers' compensation exclusivity does not apply to an employee's

---

[4] During oral argument, Plaintiffs asserted that this passage from *Simmons* was not dicta because it resolved one of the insurer's arguments. But this isn't the test for whether a particular passage in an opinion is dicta. Because the *Simmons* court had already determined that a six-year statute of limitations should apply, there was no need to address the insurer's argument about whether every element of the plaintiff's claim had been established within the limitations period—it was undisputed that the plaintiff had filed suit before the six-year limitations period expired.

- 8 -

claim for UI/UIM benefits against his employer's liability insurance carrier for a work-related accident, even though *Simmons* was not a case about workers' compensation,[5] no Arizona court has interpreted *Simmons* in this fashion in the nearly half-century since it was decided, and reaching such a conclusion would place Arizona out of step with 23 of the 24 other states that have addressed this question. The Court has serious doubt that the Arizona Supreme Court would interpret *Simmons* in this fashion, particularly given that "Arizona cases have long stated that the superior court lacks 'jurisdiction' over work-related injury cases if the employee's exclusive remedy is workers' compensation." *Bonner v. Minico, Inc.*, 766 P.2d 598, 601 (Ariz. 1988).

Last, Plaintiffs argue that *Cundiff v. State Farm Mutual Automobile Insurance Co.*, 174 P.3d 270 (Ariz. 2008) permits recovery of UM/UIM benefits in addition to workers' compensation. (Doc. 6 at 11.) It is true that, in *Cundiff*, the Arizona Supreme Court held that Arizona's Uninsured/Underinsured Motorist Act "preclude[d] an insurer from reducing . . . coverage based on the insured's receipt of workers' compensation benefits." 174 P.3d at 271. However, the plaintiff in *Cundiff* sued the "at-fault driver of the other vehicle" and the opinion does not indicate that the driver was the plaintiff's employer or her co-worker. 174 P.3d at 271. Additionally, the plaintiff sought UIM benefits "under her personal motor vehicle liability insurance policy," not under her employer's policy. *Id.* The *Cundiff* court did not consider the impact of § 23-1022 on the plaintiff's ability to recover UIM benefits, likely because § 23-1022 only limits claims "*against the employer or any co-employee* acting in the scope of his employment." *Id.* (emphasis added). *Cundiff* is therefore inapposite.

### 2. Willful Misconduct

Even though Arizona generally limits employees to workers' compensation for work-related injuries, one exception is when "the injury is caused by the employer's willful

---

[5] *See, e.g., Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *Sloan v. State Farm Mut. Auto. Ins. Co.*, 360 F.3d 1220, 1231 (10th Cir. 2004) ("[C]ases are not authority for propositions not considered.") (internal quotation marks omitted).

misconduct, or in the case of a co-employee by the co-employee's willful misconduct." A.R.S. § 23-1022(A). "Willful misconduct" is defined as "an act done knowingly and purposely with the direct object of injuring another." *Id.* § 23-1022(B). "Arizona courts are reluctant to find that employers have acted with wil[l]ful misconduct regarding even an employee's physical safety." *Mosakowski v. PSS World Med., Inc.*, 329 F. Supp. 2d 1112, 1130 (D. Ariz. 2003).

Plaintiffs argue their complaint has alleged willful misconduct because it "alleges that the at-fault co-worker was under the influence at the time of the accident, and that Imperial Ironworks allowed the co-worker to operate a company vehicle even though he did not pass drug screening tests." (Doc. 6 at 15, citing Doc 1-3 ¶¶ 22-24.) Employers responds that, "[e]ven accepting these allegations as true, there is no allegation that Garcia or Imperial acted knowingly and purposely with the direct object of injuring Plaintiffs, as required by the statute." (Doc. 9 at 9-10.)

The Court agrees with Employers. Arizona law is clear that willful misconduct requires something more than negligent or even grossly negligent behavior: the "direct object" of the conduct must have been to "injur[e] another." A.R.S. § 23-1022(B). *See also McKee v. State*, 388 P.3d 14, 19 (Ariz. Ct. App. 2016) ("There must be deliberate intention as distinguished from some kind of intention presumed from gross negligence.") (internal quotation marks omitted); *Gamez v. Brush Wellman, Inc.*, 34 P.3d 375, 378 (Ariz. Ct. App. 2001) ("Gross negligence is not sufficient to establish willful misconduct under § 23-1022. . . . [T]he employer's liability cannot . . . be stretched to include accidental injuries caused by the gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury. Even if the alleged conduct . . . includes such elements as knowingly permitting a hazardous work condition to exist . . . the conduct still falls short of the kind of actual intention to injure that robs the injury of accidental character.") (internal quotation marks omitted); *Diaz v. Magma Copper Co.*, 950 P.2d 1165, 1172 (Ariz. Ct. App. 1997) ("[W]hile there may be

evidence here that Magma was negligent . . . there is no evidence that Magma's objective was to injure Diaz."); *Allen v. Sw. Salt Co.*, 718 P.2d 1021, 1024 (Ariz. Ct. App. 1986) ("[T]here must be a genuine intentional injury, comparable to an intentional left jab to the chin.") (internal quotation marks omitted).

No such allegations are present here. Even assuming Plaintiffs' allegations as true and viewing them in a light most favorable to Plaintiffs, Plaintiffs have not alleged that Garcia's direct intent in driving under the influence and rear-ending a car was to injure Plaintiffs, nor have Plaintiffs alleged that Imperial's direct intent in permitting Garcia to drive after failed drug tests was to injure Plaintiffs.

### 3. Extra-Contractual Agreement To Provide UM/UIM Benefits

Plaintiffs argue that Employers "agreed to provide UM/UIM coverage above and beyond any workers' compensation benefits." (Doc. 6 at 5.) Specifically, Plaintiffs argue that Employers (1) did not "distinguish between insureds involved in accidents caused by a third-party[] and insureds involved in accidents caused by a co-worker" and (2) "did not include a specific exclusion excluding UM/UIM coverage caused by co-workers." (*Id.*, internal quotation marks omitted.) Employers responds that it "agreed to pay all sums the insured is legally entitled to recover . . . subject to stated exclusions, limitations, and conditions," so if "the insured is not legally entitled to recover compensatory damages from the owner or driver of the uninsured motor vehicle, then [Employers] has not agreed to pay anything." (Doc. 9 at 6-7.) Employers also argues that it would have been unnecessary to distinguish between insureds injured by third parties as opposed to co-workers because "the 'legally entitled to' recover language within the insuring provision already does that." (*Id.* at 7.)

Plaintiffs argue that *Stoecker v. Brush Wellman, Inc.*, 984 P.2d 534 (Ariz. 1999) supports their position. In *Stoecker*, employees sued to enforce their employer's agreement to supplement their income if they contracted chronic beryllium disease ("CBD") from workplace exposure. *Id.* at 535. The employer's written policy statement stated:

Special provision is made for employees who, in the course of employment

- 11 -

> with the company, contract [CBD], and consequently become partially or totally disabled.  Continued performance in a job which they are able to perform will be encouraged.  Such employees shall not suffer reduction in cash income or employee benefits as a result of their disability . . . . The company will supplement any income received through . . . Workers' Compensation . . . so that total income is equal to the employee's straight time income as of the last day worked.  Pay will continue until the employee . . . becomes eligible for normal retirement benefits under the Company's Pension Plan.

*Id.* at 535-36 (alterations in original).

The court held that the employees could sue to enforce the policy without running afoul of Arizona's rule of workers' compensation exclusivity because the action was "not brought to recover damages caused by the industrial injury but only to recover on [the employer's] promise to provide benefits over and above any compensation benefits Plaintiffs received for a specific work-related injury." *Id.* at 538.  The court noted that the action was not a "disguised method to seek tort recovery for the . . . injury" because the employees did not seek tort damages such as "actual damages, expenses for past and prospective medical care, past and prospective pain and suffering, lost earnings, [or] diminished earning capacity." *Id.* (internal quotation marks omitted).

Here, Plaintiff are seeking to recover the very sorts of damages that were deemed off-limits in *Stoecker*.  Plaintiffs' claim for benefits arises out of their injuries caused by their co-worker's allegedly tortious conduct, not out of a separate contractual provision unrelated to Plaintiffs' tort injuries.  Accordingly, Plaintiffs' argument fails.  The Court need not consider the parties' other arguments.

### 4. Reasonable Expectations

Plaintiffs argue that, even if their claim is foreclosed by the actual language of the insurance policy, they may nevertheless recover because "boilerplate cannot be used to contradict the parties' reasonable expectations." (Doc. 6 at 12.)

Under the "doctrine of reasonable expectations," "Arizona courts will not enforce even unambiguous boilerplate terms in standardized insurance contracts in a *limited* variety of situations." *Gordinier v. Aetna Cas. & Sur. Co.*, 742 P.2d 277, 283 (Ariz. 1987).

Specifically, the Arizona Supreme Court has stated explained hat "[t]erms can frustrate the insured's reasonable expectations in four situations": (1) "Where the contract terms, although not ambiguous to the court, cannot be understood by the reasonably intelligent consumer who might check on his or her rights, the court will interpret them in light of the objective, reasonable expectations of the average insured"; (2) "Where the insured did not receive full and adequate notice of the term in question, and the provision is either unusual or unexpected, or one that emasculates apparent coverage"; (3) "Where some activity which can be reasonably attributed to the insurer would create an objective impression of coverage in the mind of a reasonable insured"; and (4) "Where some activity reasonably attributable to the insurer has induced a particular insured reasonably to believe that he has coverage, although such coverage is expressly and unambiguously denied by the policy." *First Am. Title Ins. Co. v. Action Acquisitions, LLC*, 187 P.3d 1107, 1114 (Ariz. 2008).

Here, Plaintiffs don't argue that the third or fourth tests are satisfied—that is, Plaintiffs don't allege the existence of any interactions in which Employers affirmatively misled them (or Imperial) into believing that coverage for this sort of accident existed under the policy. Instead, Plaintiffs' argument implicates the first and second tests—they argue that, because the declarations page of the policy didn't say anything about the exclusivity of workers' compensation as the remedy for workplace accidents, it was reasonable for them (and Imperial) to expect that coverage would be available in this circumstance. (Doc. 1-3 ¶¶ 99-104; Doc. 6 at 14.)

This argument fails for several reasons. As a threshold matter, it is unclear whether the doctrine of reasonable expectations even applies here. As discussed in footnote two, Employers is not seeking to deny coverage based on a "boilerplate term" buried within a standardized insurance policy. Instead, Employers contends that Plaintiffs' claim is foreclosed by operation of Arizona's *statutory* workers' compensation scheme.

Moreover, even assuming that reasonable-expectations claims are potentially cognizable in this context, Plaintiffs' argument is premised in significant part on their own alleged expectations of coverage. (Doc. 1-3 ¶ 103.) However, the only named insured

under the policy was Imperial. (Doc. 5-1 at 2.) Given this backdrop, there is a strong argument that Imperial's expectations are the only expectations that matter. *See, e.g.*, *Wilshire Ins. Co. v. Yager*, 348 F. Supp. 3d 931, 938 (D. Ariz. 2018) ("Lopez was not a named insured under the Policy. Pastor was the named insured under the Policy and had the contract of insurance with Wilshire. Lopez was not a party to the insurance contract with Wilshire, and therefore Lopez's reasonable expectations have little impact on the enforceability of the Policy in this case."). Plaintiffs do not offer any facts in support of their conclusory assertion that Imperial possessed an expectation of coverage. (Doc. 1-3 ¶ 101.)

During oral argument, Plaintiffs argued that *Gordinier* authorizes consideration of their expectations despite not being named insureds, but *Gordinier* is distinguishable. There, a married couple applied for a car insurance policy and identified both of themselves as drivers, but because the application form only included space for one "applicant," only the husband was identified as the applicant. 742 P.2d at 278 & n.1. Thus, when the policy was issued, only the husband was identified as the named insured. *Id.* at 284. Later, after the couple separated, the wife was injured in an accident and asserted a claim for UM coverage. *Id.* The insurer denied the claim because the policy's UM coverage only extended to the named insured's spouse if the spouse was a "resident of the same household" and the couple's separation meant this condition was no longer satisfied. *Id.* at 280-81. Under those circumstances, the Arizona Supreme Court held that the wife's claim for coverage under the "reasonable expectations" doctrine created a jury question, because "we presume Aetna contracted to insure a husband and wife" and "limiting [the wife's] coverage merely because [her husband's] name fortuitously was listed in the application" would interfere with that reasonable expectation. *Id.* at 285. This case, of course, does not involve a "fortuitous" decision to list Imperial as the named insured rather than Plaintiffs—Plaintiffs do not allege that they participated alongside Imperial in the application/negotiation process or that they were specifically identified, by name, as covered drivers. Arizona courts have refused to consider the alleged expectations of non-

named insureds under analogous circumstances. *Ogden v. U.S. Fid. & Guar. Co.*, 933 P.2d 1200, 1206-07 (Ariz. Ct. App. 1996) ("The doctrine of reasonable expectations cannot be applied to the facts of this case. Although [employee] Lichman expected [his employer] J.M. to provide insurance for the truck, Lichman's expectations have little effect upon the enforceability of a contract of insurance issued by [insurer] USF&G. Lichman was not a party to the insurance contract.").

In any event, Plaintiffs' argument fails because, regardless of whose expectations are at play, it would not have been objectively reasonable for Plaintiffs, Imperial, or anyone else to expect coverage in this circumstance. As discussed in Part II.A.1 above, the *Teller* court specifically held in 2016—two years before the accident in this case—that coverage does not arise under these facts, the overwhelming majority of other states have reached the same conclusion, and Plaintiffs' best argument to the contrary is based on 47-year-old dicta from a case that had nothing to do with workers' compensation. If it is objectively reasonable to mistakenly expect coverage under these facts, then it is difficult to imagine a situation where a consumer's mistaken expectation of coverage could ever be deemed unreasonable. *Cf. First Am. Title*, 187 P.3d at 1114 (rejecting plaintiffs' claim that they "had a reasonable expectation of coverage" in part because "a reasonable title insurance holder would not expect protection against loss caused by its own intentional acts").

### 5. Conclusion

Because Plaintiffs are statutorily limited to workers' compensation benefits for their injuries and because Plaintiffs have not alleged that Garcia or Imperial directly intended to injure them, they are precluded from recovering UM/UIM benefits under the policy issued by Employers. Those aspects of Plaintiffs' breach of contract claim are dismissed.

Plaintiffs' allegations that their (or Imperial's) reasonable expectations were violated and that Employers contractually agreed to provide coverage above and beyond workers' compensation are also dismissed. The dismissal will be without leave to amend. During oral argument, Plaintiffs did not identify any additional facts they might allege to cure the deficiencies noted above and it appears that leave to amend would be futile.

B.   **Bad Faith**

Plaintiffs allege that Employers acted in bad faith by: (1) "failing to provide benefits as provided for in the policy," (2) "[f]orcing Plaintiffs to jump through needless adversarial [hoops] to obtain policy benefits," (3) "[f]ailing to provide a copy of the policy and the policy limits information before denying the claim," (4) "[f]ailing to conduct a reasonable and adequate investigation," (5) "[n]ot attempting in good faith to effectuate a prompt, fair and equitable settlement of claims in a claim where liability was reasonably clear," (6) "[f]ailing to pay the full value of Plaintiffs' claims without a reasonable basis," (7) "[f]ailing to obtain a coverage opinion before denying the claim," (8) "[c]ompelling an insured to institute litigation to recover amounts due under an insurance policy," (9) "[t]aking an unreasonable coverage position," (10) "[n]ot providing Plaintiffs with equal consideration," and (11) "[n]ot treating Plaintiffs fairly." (Doc. 1-3 ¶¶ 127, 129.)

1.   Allegations Arising Out Of Employers' Denial Of Coverage

Some of Plaintiffs' allegations arise out of Employers' denial of coverage. Plaintiffs allege that Employers failed to provide benefits, failed to settle the claim, denied benefits without a reasonable basis, failed to obtain a coverage opinion, forced Plaintiffs to pursue litigation to recover policy benefits, and took an unreasonable coverage position. Employers responds that it did not act unreasonably in denying coverage because Plaintiffs are not legally entitled to coverage. (Doc. 5 at 7.) The Court agrees.

"An insurance contract is not an ordinary commercial bargain; 'implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured.'" *Labertew v. Chartis Prop. Cas. Co.*, 363 F. Supp. 3d 1031, 1045 (D. Ariz. 2019) (quoting *Zilisch v. State Farm Mut. Auto. Ins.*, 995 P.2d 276, 279 (Ariz. 2000)). "A claim of bad faith arises 'when the insurance company intentionally denies, fails to process or pay a claim without a reasonable basis for such action.'" *Prieto v. Paul Revere Life Ins. Co.*, 354 F.3d 1005, 1009 (9th Cir. 2004) (quoting *Noble v. Nat'l Am. Life Ins. Co.,* 624 P.2d 866, 868 (Ariz. 1981)). "If an insurer acts unreasonably in the manner it processes a claim, it will be held liable for bad faith without regard to [the claim's] ultimate merits." *Labertew*,

363 F. Supp. 3d at 1045 (alteration in original) (internal quotation marks omitted).

Because the Court has determined that the policy did not provide coverage to Plaintiffs, Employers did not act unreasonably in denying coverage. Accordingly, the aspects of Plaintiffs' bad faith claim arising out of Employers' denial of coverage are foreclosed. *Manterola v. Farmers Ins. Exch.*, 30 P.3d 639, 646 (Ariz. Ct. App. 2001) ("We agree that a bad faith claim based solely on a carrier's denial of coverage will fail on the merits if a final determination of noncoverage ultimately is made."). Accordingly, the allegations based on Employers' failure to provide benefits, failure to settle the claim, denial of benefits without a reasonable basis, failure to obtain a coverage opinion, forcing Plaintiffs to pursue litigation to recover, and taking an unreasonable coverage position are dismissed. Because Plaintiffs have not requested leave to amend and because amendment would be futile, the Court will not grant Plaintiffs leave to amend this aspect of their bad faith claim.

2.  Other Allegations

Plaintiffs also contend that Employers acted in bad faith independent of its denial of coverage. (Doc. 6 at 16.) These allegations include that Employers made Plaintiffs jump through "needless adversarial hoops" to obtain policy benefits, failed to provide a copy of the insurance policy when asked, conducted an unreasonable investigation, and failed to treat Plaintiffs fairly and with equal consideration. Employers argues that it did all the work required of it and that, even assuming the truth of Plaintiffs' allegations, Employers treated Plaintiffs fairly and gave them equal consideration. (Doc. 9 at 11.)

Employers has the better side of this argument. Plaintiffs allege that Employers "forced Plaintiffs to jump through needless adversarial hoops to get policy benefits" (Doc. 6 at 16), but Plaintiffs were not entitled to policy benefits and, in any event, Plaintiffs' argument is contradicted by their own allegations. Plaintiffs sent a letter to Employers on April 5, 2018 requesting policy benefits, Employers responded to Plaintiffs on April 10, 2018 that it had received the claim and would be investigating, and Employers denied coverage on April 19, 2018. (Doc. 1-3 ¶¶ 44, 48-49, 52.) Plaintiffs have not articulated

exactly what adversarial hoops Employers erected against Plaintiffs, nor have Plaintiffs alleged that Employers' actions here were needless. Conclusory allegations—whether construed as allegations of fact, law, or otherwise—are insufficient to survive a motion to dismiss.

Plaintiffs also allege that Employers failed to provide a copy of the insurance policy when asked and that Employers failed to conduct a reasonable investigation. (Doc. 6 at 16.) Plaintiffs do not identify any allegations to support their claim that Employers acted in bad faith. First, Plaintiffs do not explain why Employers' failure to provide a copy of the insurance policy is evidence of bad faith, particularly considering that the policy did not provide any coverage for Plaintiffs. Second, Plaintiffs do not explain why Employers' investigation was unreasonable, given that Employers' ultimate coverage position was reasonable. The Court acknowledges that Employers' motivation in declining to provide a copy of the insurance policy and in investigating is likely in Employers' hands, but Plaintiffs have not alleged any facts to support even an inference that Employers acted in bad faith. *Cf. Echanove v. Allstate Ins. Co.*, 752 F. Supp. 2d 1105, 1109 (D. Ariz. 2010) ("An insurer's honest mistake, bad judgment or negligence does not constitute bad faith.") (internal quotation marks omitted); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) ("[P]laintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable. The court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (cleaned up).

Last, Plaintiffs have alleged Employers has treated them unfairly and has deprived them of equal consideration. (Doc. 6 at 16.) Plaintiffs have not identified any factual allegations supporting this claim. For the same reasons as explained above, such conclusory allegations are insufficient to survive a motion to dismiss. The dismissal will be without leave to amend because, again, Plaintiffs have not requested leave to amend in the event of dismissal and leave to amend would be futile because Plaintiffs did not identify any additional allegations they could offer to cure the deficiencies discussed above.

C. **Punitive Damages**

Because the Court has dismissed both of Plaintiffs' claims, the Court will also dismiss Plaintiffs' request for punitive damages. *Allen v. Quest Online, LLC*, 2011 WL 4403674, *11 (D. Ariz. 2011) ("Damages cannot stand alone as a separate claim.").[6]

Accordingly,

**IT IS ORDERED** that:

(1)   Employers' motion to dismiss (Doc. 5) is **granted**.

(2)   The Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 18th day of December, 2020.

_____
Dominic W. Lanza
United States District Judge

---

[6] Employers also contends that EMC Property and Casualty Company is entitled to dismissal for the independent reason that it was not a party to the contract with Imperial. (Doc. 5 at 1 n.1.) Because the Court dismisses the complaint in its entirety, the Court need not address this argument.